UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRA POSTELL,                              Case No. 14-11244

              Plaintiff,                     Linda V. Parker
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 20)**

## I.   PROCEDURAL HISTORY

     A.   Proceedings in this Court

     On March 26, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Linda V.

Parker referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims for period of disability,

disability insurance benefits and supplemental security income.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 17, 20).

     A.   Administrative Proceedings

     Plaintiff filed the instant claims on July 23, 2010, alleging that she was

disabled on December 31, 2004.  (Dkt. 11-2, Pg ID 53).  The claims were initially

disapproved by the Commissioner on August 8, 2011.  *Id.*  Plaintiff requested a

hearing and on June 19, 2012, plaintiff appeared with counsel before

Administrative Law Judge (ALJ), Anthony R. Smereka, who considered the case

*de novo*.  (Dkt. 11-2, Pg ID 70-113).  In a decision dated September 28, 2012, the

ALJ found that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 50-64).  Plaintiff

requested a review of that decision, and the ALJ's decision became the final

decision of the Commissioner when, after review of additional exhibits, the

Appeals Council, on January 24, 2014, denied plaintiff's request for review.  (Dkt.

11-2, Pg ID 36-39); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).[1]

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for

---

[1]  In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

further consideration.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 23 years old on the alleged disability onset date.  (Dkt. 11-2,
Pg ID 61).  Plaintiff's relevant work history included work as an assembly person,
kitchen aide, cashier, hostess, waitress, hotel housekeeper and retail clerk.  (Dkt.
11-2, Pg ID 61).  The ALJ applied the five-step disability analysis to plaintiff's
claims and found at step one that plaintiff had not engaged in substantial gainful
activity since the alleged onset date.  (Dkt. 11-2, Pg ID 56).  At step two, the ALJ
found that plaintiff's alcohol abuse, major depression and anxiety disorder were
"severe" within the meaning of the second sequential step.  *Id.*  At step three, the
ALJ found that plaintiff's severe impairments, including her alcohol abuse,
rendered her unable to work and disabled.  (Dkt. 11-2, Pg ID 60-61).  The ALJ
then found that if plaintiff stopped abusing alcohol, she would be limited to
unskilled work, but no work with the general public or with more than occasional
contact with co-workers or supervisors and no work in production pace settings.
(Dkt. 11-2, Pg ID 62).  At step four, the ALJ found that if plaintiff stopped
abusing alcohol, she would be unable to perform her past relevant work.  (Dkt. 11-
2, Pg ID 63).  At step five, the ALJ denied plaintiff benefits because, if plaintiff
stopped the substance abuse, she could perform a significant number of jobs

3

available in the national economy.  (Dkt. 11-2, Pg ID 63-64).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in concluding that plaintiff's severe impairments did not meet or medically equal a listing.  Plaintiff contends that the ALJ lacked substantial evidence to formulate the conclusion that the claimant was "not disabled" as a result of what the ALJ considered to be a "material factor," i.e., alcohol abuse.  Plaintiff points to the case of *Gonchoroff v. Soc. Sec. Comm'r*, 2013 WL 1279091 (E.D. Mich. 2013), which outlined how the Commissioner would determine whether "drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id* at 8.  Plaintiff maintains that the ALJ did not follow those requirements in this case, and thus lacked substantial evidence to conclude that the claimant was not disabled.

In Finding 4 of the ALJ's decision, the ALJ stated that he reviewed Listed Impairments § 12.04, § 12.05 and § 12.06 to assess whether plaintiff's impairments met and/or equaled a Listed Impairment.  However, plaintiff says that it is unclear from the analysis whether or not the ALJ was considering plaintiff's mental impairment, without the overlay of her previous use of alcohol, and/or, whether he was still attributing alcohol abuse to the plaintiff in determining the severity of her impairments.  This included his assessment of plaintiff's ADL's, social functioning, concentration, persistence and/or pace.

4

In evaluating plaintiff's activities of daily living, the ALJ described plaintiff's activities as including "cleaning, shopping, cooking, doing laundry and appropriate personal care and grooming." (Tr. 20). Later, the ALJ cited where this information had been gleaned from, specifically a Third Party Function Report completed by a friend of plaintiff's, Raymond Williams. (Tr. 27). Here, the ALJ selectively used some statements made by Mr. Williams, and gave his "opinion great weight," without mentioning that Mr. Williams also stated that plaintiff needs reminders regarding taking medicine … that she did not spend time with others … she needs to be reminded to go places … that she has problems getting along with others, with "a gentle talk" turning into "hostile profanity" … that she does not finish what she starts …, and, that she does not get along well with authority figures. (Tr. 308-314). Plaintiff submits that the ALJ cannot "cherry pick" the evidence to only consider those statements that comport with the ALJ's own ultimate conclusion.

Also, reviewing her ADL's, the ALJ cites a 2006 consulting examination report indicating that plaintiff "got her kids ready for school, bathed them and cooked." (Tr. 20). Then the ALJ notes "however, the removal of her children from her home, demonstrated that she struggled to maintain her activities of daily living and care for her own children." (Tr. 20). According to plaintiff, from these two excerpts, it is unclear how the ALJ determined that she only had "moderate"

limitations with regard to her ADL's, and/or how alcohol use affected or did not affect plaintiff's abilities in this regard.  Plaintiff's "struggles" to care for her children resulted, eventually, in the termination of her parental rights, suggesting significant difficulties with her activities of daily living.

With regard to "social functioning," the ALJ found that plaintiff only had "moderate difficulties" in this regard.  (Tr. 23).  However, as an explanation for his finding, the ALJ stated "her anxiety would reasonably be expected to impair her ability to interact with others. … She also committed credit card fraud, illustrative [of the fact that] she has limitations functioning within appropriate social norms."  (Tr. 23).  With the foregoing statement, plaintiff says it is unclear how the ALJ concluded that plaintiff only had "moderate" limitations with social functioning.

With regard to concentration, persistence or pace, the ALJ concluded that plaintiff only had "moderate" difficulties in this regard, while adding that "when the claimant was abusing alcohol, drinking up to two fifths per day, it is clear that she would not retain the concentration and attention required to complete work-related tasks." (Tr. 23).  According to plaintiff, however, the ALJ does not discuss how her emotional impairments, without the use of alcohol, would have improved her ability to maintain concentration, persistence or pace.  The ALJ added, as further rationale for concluding that plaintiff had the ability to

6

concentrate "in spite of her conditions," the statement that she "played video games as recently as last year," which was "illustrative" of her abilities. (Tr. 23). Plaintiff points out that there was no questioning as to her actual abilities to "play video games." There was merely a statement that she "played" her "Wii game," in lieu of being around other people, i.e., this was her way of socializing, by herself. (Tr. 563).

The ALJ also incorrectly concluded that plaintiff was able to "function outside of her home" because she "managed to work on a part-time basis during the applicable period." (Tr. 24). However, testimony at the hearing revealed that the last time plaintiff worked was in 2010, earning only $200, and stating that she worked "like a two-day job for a temporary service." (Tr. 40).

In an effort to bolster the conclusion that plaintiff's problems were mainly a result of her abuse of alcohol, the ALJ cited information from a May 2004 evaluation wherein he noted that she was "drinking a few cups of liquor approximately three times a week." (Tr. 25). According to plaintiff, the ALJ did address the fact that Dr. Asha Jain, psychiatrist at Community Network Services, in April 2010 diagnosed "the claimant with major depression disorder and alcohol abuse in remission." (Tr. 24, 536). However, the ALJ then added "it is not clear that the claimant was really in remission at this time," because at another consulting exam in February 2011, "she admitted that she stopped drinking in

7

November 2010, and prior, had been drinking up to two fifths per day, suggesting that she was not sober at the April 2010 appointment with Dr. Jain." (Tr. 24). Plaintiff contends that it is not clear how the ALJ took such a huge leap to state that the claimant was drinking "up to two fifths per day" in 2010, when that information was gleaned from a report authored considerably earlier, i.e., in 2004. Plaintiff also says there is no evidence in the record reflecting the ALJ's conclusions implying that she was not sober at her evaluation. Further, had she not been "sober" during her evaluation with Dr. Jain, the psychiatrist would certainly have noticed and put that in her report.

The ALJ concluded that plaintiff's "symptoms had lessened recently," based on a consulting exam for the State Agency by Dr. Van Horn. Because of this, the ALJ opined that this "suggested" that with the "cessation of alcohol and with proper treatment her condition was not as severe." (Tr. 29). According to plaintiff, this statement contradicts the ALJ's conclusion that she was still abusing alcohol. Further, plaintiff asserts that Dr. Van Horn's report is not quite as rosy as the ALJ suggests. The doctor administered the Wechsler Adult Intelligence Scale, which revealed a Full Scale IQ of 66 for plaintiff. (Tr. 566). This placed her in the "extremely low range of mental functioning and at the 1st percentile." (Tr. 567). Dr. Van Horn made a point of noting that plaintiff "made a good effort although her depressed mood may have interfered with her performance." (Tr.

8

566).  Dr. Van Horn also noted that plaintiff was "very isolated in that she has no close family members that she can turn to for support … loss of her children is obviously an added stressor for Ms. Postell who most likely feels as if she is all alone in the world. … She appears to have some sense of hope for the future in that she states she plans to go back to school and obtain her high school diploma. Such an accomplishment will undoubtedly help her gain some sense of self worth as she appears to be totally lacking."  (Tr. 568).

Plaintiff submits that her mental impairments/emotional problems meet and/or at least equal Listed Impairment § 12.04A Depressive Syndrome. There is documentation of the required minimum of four symptoms including: a. Anhedonia or pervasive loss of interest in almost all activities (Tr. 313, 436, 590, 594); c. Sleep disturbance (Tr. 64, 233, 309, 317, 435, 436, 536, 539, 540, 541, 546, 591, 612, 617, 628, 645; e. Decreased energy (Tr. 591, 615); and g. Difficulty concentrating or thinking (Tr. 237, 305, 313, 321, 436, 536, 591, 592, 593, 617, 621, 623.  With regard to the (B) criteria, of which a claimant must have at least two, plaintiff says her condition has resulted in the following: 1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; and, 3. Marked difficulties in maintaining concentration, persistence or pace.  According to plaintiff, evidence to support the marked limitations in the above categories appears in the psychological evaluation administered by Dr.

9

Leonard Swistak in April 2010, two months prior to Kendra Postell's hearing. Dr. Swistak documented that the claimant has "moderately severe": degree of impairment of the client's ability to relate to other people; degree of deterioration in personal habits; degree of constriction of interests; limitations in understanding, carrying out and remembering instructions; limitations in responding appropriately to supervision; limitations in responding appropriately to coworkers; limitations in responding to customary work pressures; limitations in performing simple tasks; and limitations in performing repetitive tasks. Additionally, Dr. Swistak opined that plaintiff would have "severe" restrictions with her daily activities. (Tr. 595).

The ALJ stated that he only gave "some weight" to Dr. Swistak's opinion, as it was "heavily based on the claimant's subjective reports of her symptoms and Dr. Swistak only met with the claimant once." (Tr. 26). Relative to meeting with the plaintiff "only once," the ALJ found no problems in accepting Dr. Van Horn's opinion, who also only saw plaintiff on one occasion. The ALJ gave no explanation as to why he felt that one examiner's opinion was "better" than another's. Plaintiff also points out that she evaluated by various treating psychiatrists, i.e., Asha Jain, M.D., and more recently Corina Lazar, M.D., both of whom are psychiatrists at Community Network Services. Dr. Lazar diagnosed plaintiff with "major depressive disorder, single episode, unspecified; Panic disorder with agoraphobia; ….alcohol abuse in remission. …" as well as

"personality disorder NOS."  (Tr. 648).

According to plaintiff, the ALJ lacked substantial evidence to, at first, find plaintiff disabled, based on his perception of her alcohol abuse, and then find her not disabled based on her severe emotional problems, which plaintiff maintains would be present, to a listing degree, even if plaintiff did not have issues relating to alcohol use.

Moreover, plaintiff asserts that there is no evidence in the record regarding the effects of plaintiff's alleged substance abuse on her mental impairment, and "the ALJ is not qualified to make this determination because it is well settled that '[t]he impact of alcohol on a mental condition is beyond the scope of [the ALJ's] area of expertise.'" *Gonchoroff*, at 10 citing *Trent v. Astrue*, 2011 WL 841538, at *3 (N.D. Ohio 2011).  Plaintiff's alcohol use, which was noted to be in remission, is not a contributing factor material to the determination of her disability.  Because this factor was not properly evaluated, this case should be remanded to cure the ALJ's errors in this regard.  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 380 (6th Cir. 2013).

The ALJ found the claimant "credible" relative to her anxiety and depression being an impairment to her ability to perform certain work-related tasks.  (Tr. 26). Plaintiff disagrees with the ALJ's further conclusion that her ability to concentrate and maintain the attendance required for competitive

11

employment would only suffer when she uses alcohol.

At the hearing, the ALJ inquired of the vocational expert relative to the "amount of work absences that are allowable in competitive employment." (Tr. 75). The vocational expert testified that an individual "could miss one to two days per month, but no more than fifteen days in a year." (Tr. 75). In his decision, the ALJ opined, in Finding 5, with reference to his residual functional determination, that the plaintiff had the following additional limitations: "unskilled work; … and would be absent more than four days per month because of symptoms of her alcohol abuse." (Tr. 24). Plaintiff submits that the ALJ could be correct that plaintiff would miss more than four days per month; but she also submits that this would be due to her mental and emotional impairments, and not due to symptoms of alcohol abuse, as such was noted to be in remission at the time of her hearing. Thus, according to plaintiff, the ALJ lacked substantial evidence to conclude that any absences from work would be caused by alcohol abuse. Once again, in formulating this conclusion, the ALJ did not address the requirement of assessing what limitations an individual would have, based on their mental impairment, without consideration of how alcohol would impact those same issues. The ALJ also lacked substantial evidence to conclude, as he did in Finding 16, that the "claimant would not be disabled if she stopped the substance use." (Tr. 29).

C.    The Commissioner's Motion for Summary Judgment

The Commissioner maintains that the ALJ's finding that plaintiff's continuing alcohol abuse was material to the issue of her condition on or before September 30, 2007 (and continuing through at least July 2009, a year prior to the filing of the application under review) is clearly supported by the record. Plaintiff argues that she was disabled, but this issue is not in dispute. The ALJ found she was disabled, but was not entitled to benefits because alcohol abuse was a contributing factor material to the determination of disability. (Tr. 27-29). The Commissioner must deny benefits under such a circumstance. *Watson v. Social Security Administration*., 2000 WL 303000, at * 1 (6th Cir. 2000). Moreover, plaintiff bore the burden of demonstrating that drug and/or alcohol addiction was not a contributing factor to her disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Brown v. Commissioner of Social Security*, 2015 WL 404368 at *13 (W.D. Mich. 2015).

In analyzing the issue of materiality, the ALJ may properly give considerable weight to evidence of a claimant's condition during periods of sobriety. *Monateri v. Commissioner of Social Security*, 436 Fed.Appx. 434, 443 (6th Cir. 2011); *Bartley v. Barnhart*, 117 Fed.Appx. 993, 998 (6th Cir. 2004). In the event extended periods of complete sobriety are lacking, the ALJ may properly take into account briefer periods of relative sobriety. *Fisher v. Commissioner of Social Security*, 2012 WL 1537666 at *15-16 (N.D. Ohio 2012), adopted 2012 WL

13

1552619 (N.D. Ohio 2012). According to the Commissioner, it is absolutely clear that plaintiff abused alcohol to a significant extent until at least 2009. She acknowledges drinking on a daily basis from 2002 to 2004 and stated that she increased her level of drinking even further during 2005 through 2009. (Tr. 613). Due to the lack of evidence of plaintiff's ability to function when not abusing alcohol during the period prior to the end of 2007 (because she abused alcohol continuously during such period), the ALJ took into account, plaintiff's ability to function in June 2011, after several months of claimed sobriety. (Tr. 25). At that time, Dr. Van Horn assigned her a global assessment of functioning ("GAF") score of 65 and concluded that she (1) could interact adequately with others in a work setting, (2) had the capacity to understand, remember and carry out complex as well as simple tasks, (3) was only mildly limited in her ability to handle routine, well-learned tasks due to problems with attention, concentration, persistence and pace, and (4) was only moderately impaired in her ability to withstand the pressures of day to day work. (Tr. 568).

Consistent with Dr. Van Horn's findings, and following a review of the remainder of the record, Dr. Nordbrock, a state agency psychologist, similarly concluded that she remained able to do work involving simple 1-2 step instructions, with adequate pace and persistence, and without need for excessive supervision. (Tr. 589). According to the Commissioner, plaintiff has presented no

medical evidence showing she did not, in fact, routinely abuse alcohol during the entire period between 2002 and 2007 or that, had she not abused alcohol during such period, she would have been unable to function (on a continuous basis) since December 31, 2007 or before.

Plaintiff argues that she met Listing 12.05, based on the results of IQ testing. It is true that plaintiff did undergo IQ testing in June 2011 which showed she had a full scale IQ score of 66. (Tr. 566). However, the Commissioner asserts that Dr. Van Horn, who supervised testing, did not feel that plaintiff actually functioned at the level shown by testing; rather, he concluded that she actually functioned within the low average range, based on her academic and work skills, as well as her response and behavior. (Tr. 567). Plaintiff herself did not report significant academic difficulties in school, rather she said she quit attending school due to her first pregnancy. (Tr. 613). Dr. Swistak, who saw plaintiff on one occasion in 2012, also felt that she appeared to function within the average to low average range, based on his clinical interview. (Tr. 592). Given the facts in this case, the ALJ had a sufficient basis for finding that plaintiff did not meet Listing. 12.05 (which deals with intellectual disability), despite her recent full-scale IQ score of 66. *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432-434 (6th Cir. 2014).

Plaintiff's application for SSI did not involve the period of time during

15

which she acknowledged having a significant problems with regular abuse of

alcohol.  Instead, this application covered only the period from July 2010 (when

she applied for SSI) through September 2012 (when the ALJ denied her

application).  Plaintiff contends that the evidence during this period showed that

her alcohol abuse was in remission during this later period.  It is true that plaintiff

testified that she was no longer abusing alcohol, and made such claim to various

examiners.  For instance, she testified that in June 2012 that she had last had a

drink (only one beer) on the preceding Memorial Day and that (prior to that) she

had not had a drink since November 2011.  (Tr. 44-47).  She claimed that she was

currently undergoing drug and alcohol testing (due to being on probation), and

that such tests had all shown she was "clean."  (Tr. 46).  However, no such

screening results were submitted to corroborate her claim.  Moreover, when she

was previously required to undergo regular screening tests in 2010-2011, she

skipped appointments on several occasions and had positive results on some

occasions.  (Tr. 543-547, 613).  In 2009, it was noted that she had not been

required to undergo regular screening, but had tested positive on two

(non-mandatory) screening tests.  (Tr. 615).  Due to lack of testing, her actual level

of alcohol use was not known.  *Id*.  According to the Commissioner, the same

situation applied at the time of the ALJ's decision.  If testing had taken place, as

claimed, the results were not supplied to him.  Accordingly, the ALJ was not

16

obliged to accept plaintiff's unsupported testimony that she no longer abused alcohol.  According to the Commissioner, the fact that some of plaintiff's doctors indicated her alcohol abuse was "in remission," based solely on her statements to them (Tr. 536, 538, 648) does not prove she had, in fact, stopped abusing alcohol. In fact, Dr. Lazar, on whose "in remission" diagnosis plaintiff relies, noted that plaintiff had admitted drinking in early May 2012, and also observed that she was "not able to say at this time how long her sobriety was lasting."  (Tr. 645).

Plaintiff argues that the ALJ did not follow the proper methodology in assessing whether alcohol abuse was a contributing factor material to the determination of disability.  According to the Commissioner, the ALJ followed the required methodology, as described in *Gonchoroff v. Commissioner of Social Security*, 2013 WL 1279091 at *8-9 (E.D. Mich. 2013), adopted by 2013 WL 1279090 (E.D. Mich. 2013).  First, the ALJ assessed plaintiff's condition, given ongoing alcohol abuse, and found that, when she was abusing alcohol she would be disabled, because she would not be able to a significant number of jobs in the national economy.  (Tr. 23-27).  Next the ALJ found that, in the event plaintiff ceased substance abuse, there would be a significant number of jobs in the national economy which she could perform.  (Tr. 27-28).  Accordingly, the ALJ found that a substance abuse disorder was a contributing factor material to the determination of disability, and denied her application.  (Tr. 29).

Plaintiff also argues she should have been found to meet Listings 12.04 (covering affective disorders) and 12.06 (covering anxiety disorders). As an initial matter, the Commissioner notes that, in order to meet a listed impairment, a claimant's medically determinable impairment must be accompanied by specified findings that satisfy all the criteria in the Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). It is a claimant's burden at the third step of the evaluation process to provide evidence that her condition meets or equals a listed impairment. *See Lusk v. Commissioner of Social Security*, 106 Fed.Appx. 405 (6th Cir. 2004); *Evans v. Secretary of Health and Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In this case, the Commissioner contends the ALJ's finding that plaintiff's mental impairments did not meet or equal any listed impairment was supported by the opinion of Dr. Nordbrock, a state agency psychologist who concluded she did not meet or equal any mental impairment listing. (Tr. 28, 575, 583-584). According to the Commissioner, the ALJ could properly rely on such opinion because it was consistent with the totality of the medical evidence in the record. *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 514-515 (6th Cir. 2010). The Commissioner also points out that there was no treating or examining source who ever provided proof that stated that plaintiff had marked limitations in at least two areas of mental functioning.

18

According to the Commissioner, plaintiff relies almost entirely on her own statements, made either to SSA or to some of her doctors, for support of her claim of disabling mental limitations.  She also relies on the report of Mr. Williams, a personal friend.  The Commissioner submits that such evidence was insufficient to bar the ALJ from relying on the uncontradicted assessment of the reviewing psychologist.  The ALJ relied on Dr. Nordbrock's assessment of plaintiff's mental residual functional capacity.  (Tr. 28).  Dr. Nordbrock concluded that, despite plaintiff's impairments, she remained able to do work involving simple 1-2 step instructions, with adequate pace and persistence, and without need for excessive supervision.  (Tr. 589).  Dr. Nordbrock's opinion took into account (and was consistent with) the opinion of Dr. Van Horn, who had conducted a full consultative psychological examination and had come to a similar conclusion as to plaintiff's ability to do mental work activities.  (Tr. 568).

In support of her claim that she actually had marked limitations of her ability to do mental work activities, plaintiff points to the report of Dr. Swistak. The ALJ discounted Dr. Swistak's report on the grounds that he was a one-time examiner and relied almost exclusively on plaintiff's own representations as to the extent of her limitations.  (Tr. 25).  While Dr. Swistak did also take into account plaintiff's demeanor and appearance during this one encounter, the ALJ's observation that Dr. Swistak had very little basis for his imposition of numerous

"moderately severe" and "severe" limitations other than plaintiff's representations. He did not review other medical records, like Dr. Nordbrock, or conduct any sort of extensive testing, like Dr. Van Horn.  On the other hand, Dr. Van Horn who administered the MMPI, noted that this test had yielded possibly invalid results. (Tr. 567).  Even if Dr. Swistak's report was well-supported by testing, it still suffers from the fact that it did not take into account any sort of longitudinal treatment evidence.  Nothing in his report shows that plaintiff's condition, even if it were as bad as he believed it to be, had lasted or could be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Abbott v. Sullivan*, 905 F.2d at 923.  The record contains little in the way of ongoing treatment records during the period July 2010 through September 2012.  It appears that most of plaintiff's seeking out of mental health treatment during such period was prompted by court requirements to do so.  (*See* Tr. 645).  She apparently sought care only sporadically, and when she returned to Community Network Services again in 2012, it was again following legal difficulties.  *Id*.

Plaintiff challenges the ALJ's finding that discounted her complaints of disabling limitations, arguing that the ALJ incorrectly considered the nature and extent of her activities.  The Commissioner contends that the ALJ considered many other factors in finding her testimony not fully credible on the issue of how

she would be able to function if and when she was not engaged in ongoing alcohol abuse.  These also included the nature and (mostly minimal) extent of the treatment she sought, the actual findings on evaluation, and the expert medical opinions in the record.  (Tr. 28).  The ALJ also took into account Dr. Park's observation that plaintiff talked about the results of drug screening only when directly asked and appeared to possibly be over-reporting her symptoms.  (Tr. 24, 547).  The Commissioner submits that the factors considered by the ALJ in assessing (and rejecting) the credibility of plaintiff's claims of disabling symptoms were both appropriate and sufficient.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003); 20 C.F.R. §§ 404.1529(a) and 416.929(a).

Plaintiff argues that the vocational expert's testimony that she could return to her past work was legally insufficient because the ALJ did not properly describe her limitations in the hypothetical presented to that expert.  While it is true that the expert also testified that she could not do the jobs identified by the expert if she would routinely miss two or more days of work per month due to her mental impairments (Tr. 75), the Commissioner again contends that the ALJ had an adequate factual basis for his finding as to what plaintiff ought to be able to do when not engaged in alcohol abuse.  Accordingly, the Commissioner maintains that the ALJ did not need to accept a response to a hypothetical that assumed such unsubstantiated extra restrictions. *Stanley v. Secretary of Health & Human*

21

*Services*, 39 F.3d 115, 118 (6th Cir. 1994); *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

### III.    DISCUSSION

####    A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by

25

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits

are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

1.      Alcohol Abuse

In 1996, the Contract with America Advancement Act ("CAAA") amended

the Social Security Act, providing that "an individual shall not be considered to be

disabled . . . if alcoholism or drug addiction would . . . be a contributing factor

material to the Commissioner's determination that the individual is disabled."  42

U.S.C. § 423(d)(2)(C).  Following these amendments, the Commissioner

promulgated regulations governing disability claims that involve substance abuse:

> How we will determine whether your drug addiction or
> alcoholism is a contributing factor material to the
> determination of disability.
>
> a) General. If we find that you are disabled and have
> medical evidence of your drug addiction or alcoholism,
> we must determine whether your drug addiction or
> alcoholism is a contributing factor material to the
> determination of disability.
>
> (b) Process we will follow when we have medical
> evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining
> whether drug addiction or alcoholism is a contributing
> factor material to the determination of disability is
> whether we would still find you disabled if you stopped
> using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which
> of your current physical and mental limitations, upon
> which we based our current disability determination,
> would remain if you stopped using drugs or alcohol and

28

then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935; *see also*, *Gonchoroff*, *supra*. In other words, if the ALJ completes the five-step process outlined above and determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis in order to determine if the claimant would still be disabled without the substance abuse. *See id.* The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability. *Trent v. Astrue*, 2011 WL 841538, at *3 (N.D. Ohio 2011), citing *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). The ALJ, however, retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Beatty v. Comm'r of Soc. Sec.*, 2011 WL 4407557, at *6 (E.D. Mich. 2011) (citation omitted), *adopted by* 2011 WL 4406331 (E.D. Mich. 2011). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-

29

acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.* (citation omitted).

The ALJ here determined, at step three of the sequential evaluation, that plaintiff's mental impairments, including her alcohol abuse, would preclude her from working because her alcohol abuse would cause her to be absent more than four days per month. (Dkt. 11-2, Pg ID 58). The ALJ then continued his analysis pursuant to 20 C.F.R. §§ 404.1535, 416.935, and found that if plaintiff *stopped* the alcohol abuse, she would have the same RFC, except that she would not miss four days of work per month due to her alcohol abuse. (Dkt. 11-2, Pg ID 62).

While the parties disagree on when or even if plaintiff stopped abusing alcohol, the more important issue here is the lack of medical opinion evidence in the record regarding the effect of plaintiff's alleged alcohol abuse on her depression and anxiety. Plaintiff had mental health treatment over the course of several years through mental health programs. In addition, plaintiff had several consultative examinations between 2006 and 2013. Unfortunately, none of these treating or consulting mental health professionals offered any specific opinions regarding the effect of alcohol or substance use on plaintiff's ability to work. Accordingly, there is no medical opinion evidence on the effect of plaintiff's alcohol abuse on her mental impairments and the ALJ is not qualified to make this determination because it is well settled that "[t]he impact of alcohol [and drug use]

30

on a mental condition is beyond the scope of [the ALJ's] area of expertise." *See Trent*, 2011 WL 841538, at *5-6 ("The impact of alcohol on a mental condition is beyond the scope of the ALJ's area of expertise and an ALJ may not assume that depressive symptoms would improve with ongoing treatment and stopping the consumption of alcohol."); *Mathious v. Barnhart*, 490 F. Supp.2d 833, 847 n.14 (E.D. Mich. 2007) ("The ALJ is not a medical doctor . . . and is therefore not qualified to determine whether someone's functional limitations and IQ scores are the product of alcohol or drug usage without some competent evidence or more thorough explanation.").  In the view of the undersigned, this is where the ALJ should have contacted the mental health professionals who treated and examined plaintiff because this critical issue was undeveloped.  *See Leigh v. Comm'r of Soc. Sec.*, 2011 WL 2746219, at *9 (E.D. Mich. 2009) (remanding the matter to the Commissioner for determination as to the limitations on plaintiff's ability to work during periods of sobriety or the extent of improvement of his symptoms during such periods), *adopted by* 2011 WL 2746199 (E.D. Mich. July 14, 2011).  The ALJ's decision lacks substantial support for his finding alcohol continued to be material to plaintiff's claimed disability.  *See Mathious*, 490 F. Supp.2d at 848.

Because the ALJ failed to follow the controlling regulations, this matter should be remanded for further proceedings, including further development of the record to determine the effect of alcohol abuse on plaintiff's potential disability.

*See Sawdy v. Comm'r of Soc. Sec.*, 436 Fed. Appx. 551, 553 (6th Cir. 2011)

("Even when 'substantial evidence otherwise supports the [ALJ's] decision,' we

must remand if 'the agency failed to follow its own procedural regulation.'")

(citing *Wilson*, 378 F.3d at 544).  Given these conclusions, plaintiff's credibility

will necessarily require reevaluation.

    2.    The Listings

    Plaintiff claims that she meets or medically equals the Listings in §§ 12.04,

12.05, and 12.06.  In order to meet either Listing 12.04 or Listing 12.06, plaintiff

must show that she satisfies the criteria in both Paragraphs A and B of those

listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  The A criteria

consist of clinical findings which medically substantiate a mental disorder.   To

satisfy the B requirements of Listings 12.04 and 12.06, plaintiff must establish at

least two of the following limitations: (1) marked restriction of activities of daily

living; (2) marked difficulties in maintaining social functioning; (3) marked

difficulties in maintaining concentration, persistence, or pace; or (4) repeated

episodes of decompensation, each of extended duration.  *Id*.  Alternatively, under

Listing 12.04 or 12.06, a claimant may satisfy the requirements of a listed mental

impairment if she has a medically substantiated mental impairment and functional

limitations that meet the "C" criteria of the listing.  The "C" criteria for Listing

12.04 requires a medically documented history of a mental impairment and one of

32

the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.   For Listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.  Plaintiff really only undertakes an analysis of 12.04, not 12.06.  (Dkt. 17, Pg ID 739).  Plaintiff relies on Dr. Swistak's conclusions that she satisfied the "B" criteria and met the listing.  However, the ALJ concluded that Dr. Swistak's evaluation was to be accorded little weight because it was based on plaintiff's subjective report and because he had not reviewed plaintiff's medical records.  Plaintiff finds fault with this conclusion.  In light of the other medical opinion evidence of record, including a 2011 review by Dr. Nordbrock, who concluded that plaintiff did not meet Listing 12.04 or 12.06 and a 2006 review by Dr. Kriauciunas, who concluded that plaintiff did not meet these Listings, the ALJ's weighing of the opinion evidence is supported by substantial evidence.  Moreover, in a 2011 evaluation, Dr. Van Horn concluded that plaintiff had the ability to relate to others, including

33

coworkers, supervisors and the general public in a work-related environment and the ability to understand, remember and carry out simple and complex tasks. Dr. Van Horn concluded that plaintiff's ability to maintain attention, concentration, persistence and pace when performing routine, well-learned tasks is mildly impaired due to her depressed mood and her ability to withstand the stress and pressures associated with day to day work is moderately impaired by her depressed mood. Based on the foregoing, the undersigned finds no basis to disturb the ALJ's conclusions regarding these listings. As to the ALJ's conclusion that plaintiff did not meet Listing 12.05, in light of Dr. Van Horn's ultimate conclusions, despite a Full Scale IQ of 66, which based on extensive personality and intelligence testing, an in-person assessment, the undersigned finds no basis to disturb the ALJ's findings in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further consideration.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

34

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 6, 2015                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 6, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood_____
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov